IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILLIAM KIPER,                          §
                                        §
                Plaintiff,              §
                                        §
VS.                                     §    CIVIL ACTION H-11-3008
                                        §
BAC HOME LOANS SERVICING, LP            §
aka BANK OF AMERICA, N.A., and          §
FEDERAL NATIONAL MORTGAGE ASSOC.§
aka FANNIE MAE,                         §
                                        §
                Defendants.             §


                                        CONSOLIDATED WITH

WILLIAM KIPER,                          §
                                        §
                Plaintiff,              §
                                        §
VS.                                     §    CIVIL ACTION H-11-3363
                                        §
BAC HOME LOANS SERVICING, LP            §
aka BANK OF AMERICA, N.A., and          §
FEDERAL NATIONAL MORTGAGE ASSOC.§
aka FANNIE MAE,                         §
                                        §
                Defendants.             §

**OPINION AND ORDER**

     Pending before the Court in the above referenced cause,
seeking equitable, declaratory and injunctive relief to prevent
Defendants Bank of America, N.A.[1] ("BAC") and Federal National
Mortgage Association ("Fannie Mae")from enforcing the terms of a
promissory note and deed of trust and to enjoin foreclosure on *pro*

_____
     [1] Incorrectly named as BAC Home Loans Servicing, LP.

*se* Plaintiff William Kiper ("Kiper") and his wife's ("Emma Kiper's") residential property and their eviction, are the following motions:  (1) Defendants' motion for judgment on the pleadings (instrument #9); (2) Kiper's motion for summary judgment (#13); and (3) Defendants' unanswered motion to strike Plaintiff's Second Amended Complaint (#25).

Two separate lawsuits filed in state court by Kiper against the same Defendants were removed by Defendants, and then consolidated here.  They both reflect Kiper's efforts to prevent foreclosure on and eviction of Kiper and his wife from their residential property at 8755 Skyline Lane, Conroe, Texas and to convey title of that property from Fannie Mae back to Kiper.  Bank of America services the Deed of Trust that secures that property and the Federal National Mortgage Association is the lender and holder of the Note.

## Defendants' Motion to Strike (#25)

Because the threshold issue here is determining the controlling pleading in each of the two cases, the Court addresses the last motion first.

Defendants insist that Kiper's Second Amended Complaint (#24), filed after consolidation of the two suits, was not only filed without seeking Defendants' consent or leave of Court as required by Rule 15(a)(2), but it is essentially the same as his two prior complaints, adding no new parties or substantive claims, and as

such, amendment is futile because the Second Amended Complaint cannot withstand Defendants' pending Rule 12(c) motion to dismiss. United States Magistrate Judge Frances Stacy dismissed Plaintiff's [First] Amended Complaint (#12), also filed after the consolidation, because Kiper failed to respond to Defendants' motion to strike it (#14) and because he failed to obtain consent from Defendants or leave from the Court to file it. #20. This Court strikes the Second Amended Complaint for the same two reasons.

Thus the governing pleading in each case is that filed in state court before these cases were removed, copies attached to the Notice of Removal. #1-1 in each suit.

### Allegations in Plaintiff's Petitions

**In H-11-3008 (#1-1)**

Plaintiff alleges that he purchased a property at 8755 Skyline Lane, Conroe, Texas 77302, with a mortgage from Countrywide Home Loans, Inc. on October 27, 2005. On February 14, 2008 his wife, Emma Kiper, was severely injured in a hit-and-run automobile accident and his insurance company refused to pay over $30,000 in medical bills. Plaintiff ultimately settled with the insurer in 2010.

Meanwhile Plaintiff contacted BAC a number of times after September 2009 to request a loan modification. At first he was told that he did not have enough income, then that he would have to

wait at least three months to qualify to reapply.  Finally he was granted a loan modification on July 8, 2010.  Kiper found errors in the contract that the BAC submitted to him and continued to complain to BAC.  BAC subsequently claimed that it had lost Plaintiff's documents and asked for 60 more pages.  When Plaintiff called BAC on April 4, 2011, the day before a foreclosure auction on his property was scheduled, he was told that his application had been resubmitted along with a request for postponement of the auction.  Nevertheless, his property was sold at auction on April 5, 2011 to Federal Mortgage Registration, Inc.  Plaintiff filed an appeal of the foreclosure and continued to contact Defendants every week.  On May 16, 2011 BAC told Kiper that Kiper's request that the foreclosure be rescinded had been granted and that BAC's underwriters had approved a trial loan modification.  On May 17, 2011 Plaintiff called BAC again and was told that the person he spoke to the day before did not exist.  Kiper continued to call every few days through May and June.  On June 7, 2011 Emma Kiper was summoned to appear at an eviction hearing on June 23, 2011, at which time the Justice of the Peace gave Plaintiff thirty days to vacate the property.  On June 21, 2011 Fannie Mae requested and received correspondence documenting the allegedly misleading statements and documents that Plaintiff had received from BAC, but Fannie Mae refused to rescind the foreclosure or delay the eviction.

Plaintiff states he has paid off the medical bills and that he and his wife are working full time and now have an annual income of $96,000.

Kiper charges BAC with deceptive business practices and strings together references to the State of Texas Penal Code, Title 7, Offenses against Property, Chapter 32, Fraud, subchapter A. General Provisions, Section 34.42, Deceptive Business Practices, (12), making a materially false or misleading statement, (A) in an advertisement for the purchase or sale of property or service, or (B) otherwise in connection with the purchase or sale of property or service. He seeks an injunction stopping the eviction process, an order that Fannie Mae convey title for the property to Kiper, and an order that BAC must act in good faith in submitting to Kiper a legitimate loan modification agreement.

Attached to his Petition are (1) a chart ("Time Line") (Ex. A), apparently drawn up by Kiper, showing his alleged contacts with Defendants and dates thereof; Ex. B, Phone log, apparently created made by Kiper, of calls to BAC; (3) Ex. C, "Loan Modification Agreement," which is actually a letter addressed to Emma Kiper summarizing a proposed loan modification agreement which would not be effective until completed, signed, and notarized; (4) an affidavit by Kiper, dated 7-18-11, detailing the couple's income, debts, and monthly expenses; and (5) an appraisal of the property by the Montgomery County Central Appraisal District.

**In H-11-3363 (#1-1)**

The allegations are in large part the same as or similar to those in the other suit.  Kiper does add that, after reporting errors in the proposed loan modification contract submitted by BAC in July 2010, Kiper called BAC every three days from July 10, 2010 to December 20, 2010.  He claims that BAC told him on July 10, 2010 that the loan modification department could not correct the documents because only the escrow department could determine the correct amount.  When he called the escrow department, he was told that it did not have access to a loan modification agreement until it was finalized and that Plaintiff should call the loan modification department.  When he called there on July 12, 2010, BAC said the loan modification department would send an email message to the escrow department, but when he checked with the latter on July 19, 2010, he was told that no email message had been received.  He asserts that BAC "used this system of bait and trap to defraud Plaintiff."  He continued to call every three days from August through October, repeatedly asking how much he should pay for his mortgage, and each time BAC said he could pay any amount. Finally on October 12, 2010, the errors were resolved, but he was told that the offer sent out on July 7, 2010 had expired and that he would have to reapply.  Kiper reapplied that day and continued to call every week through January 10, 2011.  Kiper asked for documentation of correspondence and was told that BAC would not

send any documentation until an agreement had been finalized, "thus perpetuating Defendant BAC Home Loan's fraud on Plaintiff."

On January 10, 2011 BAC informed Plaintiff that foreclosure proceedings had been started.  On January 24, 2011 BAC told him that it had "lost" Plaintiff's documents and asked Plaintiff to fax twenty-four pages.  On March 25, 2011 BAC asked Plaintiff for another sixty pages of documents.

Each time Kiper called he was asked to repeat all the facts from start to finish, even though BAC said Plaintiff's records were on the "screen."  Each time Kiper asked for a written copy of a decision or an agreement, he was told that BAC could not send any written documents until a final decision had been made.  "This scheme of not providing documentation allowed Defendant . . . to defraud Plaintiff by changing the terms of the loan process each time Plaintiff called."

Kiper identifies the person who told him on May 16, 2011 that his request that the foreclosure be rescinded had been granted and that a trial loan modification has been approved was Alta Smith. The next day when he called, he was told by "Barbara" that there was no person named Alta Smith working at BAC and no record of a request for a rescindment of the foreclosure nor of an active loan modification request.  On May 18, 2011 he was told that there was an active loan modification under review, but that no decision had been made.

In addition to the relief requested in the other suit, Kiper sought $146,310 in economic damages from BAC and $50,000 from Fannie Mae.

### Standard of Review

The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(reciting the long-established rule that documents filed pro se are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, "[e]ven a liberally construed pro se civil rights complaint . . . must set forth facts giving rise to a claim on which relief can be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

Under Federal Rule of Civil Procedure 12(c), "'when standing is challenged on the basis of the pleadings,' we must 'accept all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Association of American Physicians & Surgeons, Inc. v. Texas*, 627 F.3d 547, 550 (5th Cir. 2010), *quoting Pennell v. city of San Jose*, 485 U.S. 1, 7 (1988). A motion under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v.*

*MySpace, Inc.*, 528 F.3d 413, 419 (5ᵗʰ Cir. 2008); *Johnson v. Johnson*, 385 F.3d 503, 529 (5ᵗʰ Cir. 2004).  The Court must limit its inquiry to facts stated in the complaint and documents either attached to or incorporated into the complaint.  *Wilson v. Birnberg*, 667 F.3 591, 600 (5ᵗʰ Cir. 2012).

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5ᵗʰ Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5ᵗʰ Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.

2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570."[T]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 129 S. Ct. at 1949.   The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

On a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine  the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011).   "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

-11-

Federal Rule of Civil Procedure 9(b) provides,

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other condition of mind of a person must be averred generally.

In addition to Rules 8(a) and 12(b)(6), fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).   The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."   *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).   "In every case based upon fraud, Rule 9(b) requires the plaintiff to allege as to each individual defendant 'the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001).

Because "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or

not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994). "Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742-43 (S.D. Tex. 1998). *See also, e.g., Berry v. Indianapolis Life Ins. Co. "Berry I")*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Where "[t]he factual background of . . . claims is substantively identical," causes of action arising under DTPA, the Texas Insurance Code, or common law fraud must satisfy Rule 9(b), which reaches "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith*, 9 F. Supp. 2d at 742, *citing Berry*, 608 F. Supp. 2d at 789, 800; *Hernandez v. Ciba-Geigy Corp., USA*, 200 F.R.D. 285, 290-91 (S.D. Tex. 2001). The same is true of claims for negligent misrepresentation where the factual allegations underlying it and a fraud claim are the same. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003)("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. . . . That is the case here, as Benchmark's fraud and negligent misrepresentation

claims are based on the same set of alleged facts."), *citing Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Berry v. Indianapolis Life Ins. Co. ("Berry II"),* No. 3:08-CV-0248-B, 2010 WL 3422873, *16 (N.D. Tex. Aug. 26, 2010), *citing Benchmark* and *Biliouris v. Sundance Res., Inc.,* 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008)(dismissing negligent misrepresentation claim based on the same operative facts as an insufficient fraud claim).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay

Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

### Defendants' Motion for Judgment on the Pleadings (#9)

Defendants move for judgment on the pleadings and dismissal of this lawsuit on the grounds that Kiper lacks standing to assert any claims against Defendants arising from them mortgage loan default and subsequent foreclosure sale.  Specifically they argue that Emma Kiper, who is not a party to either of these consolidated lawsuits, is the actual borrower on the Note and Deed of Trust.  William Kiper's claim rests on the fact that she is his spouse.  Defendants maintain that as Emma Kiper's husband, William Kiper may have some limited interest in the property that she purchased, but he has no contractual privity with Defendants nor in the underlying mortgage debt.  Emma Kiper alone obtained a mortgage loan from America's Wholesale Lender to purchase the real property located at 8755 Skyline Lane, Conroe, Texas 77302.  Ex. A, copy of the Note.

Defendants argue that the general rule is that only the "mortgagor or those claiming under him in privity," or those primarily liable for the payment of the mortgage debt or any deficiency, can attack the foreclosure sale.  *Estelle v. Hart*, 55 S.W. 2d 510, 513 (Tex. Comm'n App. 1932, op. adopted); *Mercer v. Bludworth*, 715 S.W. 2d 693, 698 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.).  "The inquiry as to whether a particular [litigant] has standing has two components, involving 'both constitutional limitations on federal court jurisdiction and

prudential limitations on its exercise.'" *Assoc. of Community Orgs. v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999), *citing Warth v. Seldin*, 422 U.S. 490, 498 (1975).   To establish Article III standing a plaintiff must demonstrate (1) an injury in fact; (2) that is fairly traceable to the challenged act; and (3) that is likely to be redressed by the requested remedy.   *Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996). Defendants maintain that William Kiper fails to show that he was personally harmed by the foreclosure and sale.

Defendants further contend that even if Article III jurisdiction exists, federal courts have applied prudential concerns to limit the exercise of that jurisdiction.   "Numbered among these prudential requirements is the doctrine of particular concern in this case:  that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision . . . invoked in this suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).   They complain that in this action, William is a non-debtor attempting to assert the legal rights and interests of a third party, his wife Emma.   As such Kiper's non-debtor grievance against Defendants does not fall "within the zone of interests" contemplated by the parties to the mortgage agreement.   Emma and her creditor-Defendants (since the mortgage documents provide Defendants with the right to accelerate

debt following a borrower's default and to enforce the debt through foreclosure) are within the "zone of interest."[2]   Defendants contend that a non-debtor spouse is not in the class of person primarily intended to benefit from the mortgage loan agreement between borrower and creditor.  It is undisputed that Emma Kiper is the mortgagor on Defendants' Note and Deed of Trust.  There is no evidence that William Kiper is in contractual privity with Emma to repay her mortgage debt.  He has no personal liability for any loan default or deficiency.  Defendants cannot enforce the mortgage debt against William because they have no contract with him.  Thus this suit should be dismissed for lack of prudential standing.

Defendants also argue that even if William Kiper claims the he orally agreed to pay or regularly contributed towards payment of Emma Kiper's mortgage loan, the statute of frauds requires that the promise must be in writing to be enforceable.  The same is true of any oral agreement with BAC to defer foreclosure and enter a loan modification.

The Court agrees that the statute of frauds appears to bar Kiper's oral agreement claims.   Under Texas law, the statute of frauds usually bars the enforcement of contracts, including loan

---

[2] This Court notes that § 51.002 of the Texas Property Code governs a foreclosure sale of real property pursuant to a deed of trust and sets out the requirements for a foreclosure sale, including *inter alia* notice to the debtor "who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." § 51.002(a)-(b).  Those records reflect that Emma Kiper is the debtor.

agreements, that exceed $50,000 in value "'unless the agreement is
in writing and signed by the party to be bound or by the party's
authorized representative..'" *Grievous v. Flagstar Bank FSB*, Civ.
A. No. H-11-246, 2012 WL 1900564, *5 (S.D. Tex. May 24, 2012),
*quoting* Tex. Bus. & Com. Code § 26.02(b).  That requisite written
loan agreement determines a party's rights and obligations and
supersedes and merges into the loan agreement all prior agreements
between the parties.  *Id., citing id. and* § 26.02(c).  The statute
of frauds bars and makes unenforceable oral modifications to a loan
agreement under § 26.02 unless they fall within an exception to the
statute of frauds or do not "'materially alter the obligations
imposed by the original contract.'" *Id., quoting Montalvo v. Bank
of America Corp.*, ___ F. Supp. 2d ___, No. SA-10-CV-360-XR, 2012 WL
1078093, at *13 (W.D. Tex. Mar. 30, 2012); *see also Wiley, N.A.*,
2012 WL 1945614, *6 ("both Texas and federal courts have concluded
that, generally, both the original loan and any alleged agreement
to modify the original loan are governed by section 26.02 and must
be in writing.'").  "An oral agreement to modify the percentage of
interest to be paid, the amounts of installments, security rights,
the terms of the remaining balance of the loan, the amount of
monthly payments, the date of the first payment, and the amount to
be paid monthly for taxes and insurance is an impermissible oral
modification." *Montalvo*, 2012 WL 1078093 at *13, *citing Horner v.
Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984).  "[W]here the

plaintiffs allege that they applied for a specific program altering their obligations under the original loan and came to an oral agreement with the bank regarding this program, this is a material alteration of the underlying contract and thus subject to the statute of frauds." *Id., citing Deuley v. Chase Home Finance, LLC,* Civ. A. No. H-05-04253, 2006 WL 1155230, *2 (S.D. Tex. Apr. 26, 2006). Thus even if the bank orally did promise and approve a loan modification to Kiper, the statute of frauds would preclude recovery on his claim.

Alternatively, Defendants seek dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). In both original petitions, Kiper alleges that the property was wrongfully posted for foreclosure because BAC had informed him that it would not foreclose during review of Emma's loan modification request. He also claims that Defendants fraudulently obtained title to the property.

Defendants construe the allegations as asserting causes of action for fraud, misrepresentation, unreasonable collection efforts, violations of the Texas Debt Collection Act ("TDCA"), Texas Financial Code §§ 392.001 *et al.*, and of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*, with Kiper seeking damages in excess of $196,000, attorney's fees, costs, declaratory relief, and a loan modification.

Since Kiper's claims arise from Defendants' enforcement of the Note and Deed of Trust executed by Emma Kiper, to the extent that he claims that Defendants wrongfully foreclosed on the property and failed to modify the mortgage loan, his claim is a breach of contract claim.   That claim fails for two reasons:   (1) William Kiper is not a party to either the mortgage loan or the loan modification agreement (Exhibit C to #10), and (2) a party to a contract who is in default (Emma Kiper) cannot maintain a suit for breach of contract.   *Sproul v. Sasser*, No. 05-08-00502-CV, 2009 WL 2232240, *3 (Tex. App.--Dallas July 28, 2009, no pet.)("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach."), *citing RE/MAX of Texas, Inc. v. Katar Corp.*, 989 S.W. 2d 363, 364-65 & n.4 (Tex. 1999)("'A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.'").

Defendants furthermore argue that Kiper's wrongful foreclosure claim fails because he did not and cannot plead a defect in the foreclosure process or that the property sold for a grossly inadequate sales price.   *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W. 2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied).

In addition Defendants assert that Kiper's DTPA claim fails because he is not a "consumer" under the statute, i.e., he did not

seek or acquire by purchase or lease any goods or services from Defendants. Tex. Bus. & Com. Code Ann. § 17.45. The statute also requires that the goods or services purchased or leased must form the basis of the DTPA complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W. 2d 535, 539 (Tex. 1981). Neither element is alleged nor can be alleged under the facts here.

The Court agrees that neither Emma nor William Kiper qualifies as a "consumer" under the DTPA regarding their efforts to prevent and now rescind the foreclosure on the Note, Deed of Trust, and/or proposed Loan Modification Agreement. A person who seeks "only the extension of credit . . . and nothing more" is not a consumer under the DTPA because the lending of money is not a good or service." *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W. 2d 558, 566-67 (Tex. 1984), *citing Riverside National Bank v. Lewis*, 603 S.W. 2d 169, 175-76 (Tex. 1980).

Nor, Defendants conclusorily assert, is Kiper a debtor of Defendants, so he lacks standing to bring any debt collection claims under the DCPA. This Court would add that a "debt collector" under the DCPA tracks the definition of a "debt collector" in the Federal Debt Collection Practices Act, which does not include a consumer's creditors or mortgage servicing company. *Cervantes v. U.S. Bank Nat. Ass'n*, Civ. A. No. 3:12-CV-0661-D, 2012 WL 1605558, *4 (N.D. Tex. May 8, 2012)(and cases cited therein).

Kiper complains that the loan servicers failed to give him a

-21-

loan modification in accordance with the Home Affordable Modification Program ("HAMP"), 12 U.S.C. § 5201. HAMP does not create a private right of action against lenders and servicers. The Court agrees. *See, e.g., Miller v. Chase Home Finance, LLC*, 677 F.3d 1113 (11th Cir. 2012); *Hung Quang Tran v. BAC Home Loans Servicing, LP*, No. 4:10-cv-03514, 2011 WL 5057099, *2-3 (S.D. Tex. Oct. 24, 2011)(collecting cases to show "the majority of courts have held that HAMP does not create a private right of action in a borrower"); *No Implied Private Right of Action Under HAMP*, 15 Consumer Financial Services Law Report 5 (2012). Here, too, the Court agrees.

Next Defendants urge the Court to conclude that even if Rule 9(b) particularity requirement were satisfied by the pleadings, the economic rule doctrine bars Kiper's fraud/misrepresentation claim because the sole basis for liability, if any, against Defendants is contractual in nature by the terms of the Note, Deed of Trust, and Loan Modification Agreement. Texas courts have an established state policy against twisting breach of contract claims into tort claims, i.e., the economic loss doctrine[3] bars tort claims when the

---

[3] *See, e.g., Arlington Home, Inc. v. Peak Environmental Consultants, Inc.*, 361 S.W. 3d 773, (Tex. App.-Houston [14th Dist.] 2012)(The economic loss rule "generally precludes recovery in tort when the only economic loss to the plaintiff is the subject matter of a contract."), *citing inter alia Sharyland Water Supply corp. v. City of Alton*, 354 S.W. 3d 407, 417 (Tex. 2011)("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.").

parties' relationship and their attendant duties arise from a contract.  Under the doctrine the court examines two factors, the source of the duty and the nature of the remedy.  Kiper's fraud/misrepresentation allegations are based on Defendants' "misleading and inconsistent information, lost correspondence, verbal abuse, and extensive delay" in "communicating the status of Emma's mortgage loan modification."  The claim derives from the default and enforcement of the indebtedness at issue.  Therefore Kiper's alleged tort damages are economic and arise from claims dependent upon the existence of a contract.  *See, e.g., Wiley v. U.S. Bank, N.A.*, Civ. A. No. 3:11-CV-1241-B, 2012 WL 1945614, *12 (N.D. Tex. May 30, 2012).  Here, too, The Court concurs.

Nor do Kiper's claims of fraud and negligent misrepresentation, i.e., that BAC made statements that it would approve a loan modification or defer foreclosure until the loan modification request was processed, satisfy Rule 9(b)'s particularity requirements requiring clear identification of the challenged statements, the speaker, where and when the statements were made and why the statements are fraudulent.  *See Owens v. BAC Home Loans Servicing, LP*, Civ. A. No. H-11-2742, 2012 WL 1494231, *6 (S.D. Tex. Apr. 27, 2012).  The Court concurs.

Defendants additionally argue that the fraud/misrepresentation claim also fails because a promise of future conduct, in this case the alleged agreement to postpone the foreclosure of the property,

is insufficient to support such a claim.  Here, too, the Court agrees.  *See Ezennia v. Wells Fargo Bank,* N.A., Civ. A. No. H-10-5004, 2012 WL 1556170, *6 (S.D. Tex. Apr. 27, 2012), *citing Scherer v. Angell*, 253 S.W. 3d 777, 781 (Tex. App.--Amarillo 2007)("for negligent misrepresentation claim the false representation 'must be a misstatement of an existing fact rather than a promise of future conduct"), and *Defrancheschi v. Wells Fargo Bank, N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, *6 (N.D. Tex. 2011)("Defendants correctly argue that the alleged promise to modify the note and delay foreclosure in the future is not a statement of existing fact."); *Miller v. BAC Home Loans Servicing, LP*, Civ. A. No. 6:11cv22, 2012 WL 1206510, *6 (E.D. Tex. Mar. 23, 2012). Furthermore the statute of frauds and parol evidence rule require such promises to be written to be enforceable.

Last, Defendants argue that Kiper's claim for injunctive relief fails as a matter of law because he comes to the Court with unclean hands.  Emma Kiper failed to fulfill her contractual obligation to pay her mortgage timely; one who seeks equity must do equity.

### Plaintiff's Motion for Summary Judgment (#13)

Plaintiff's motion for summary judgment is in essence a response to Defendants' motion for judgment on the pleadings, so the Court will address it as such.

Plaintiff objects to the no standing argument on the grounds

that Texas is a community property state and in the absence of an agreement between husband and wife, spouses are liable for a note signed by either for community assets during marriage. If the debt incurred during marriage was used for the benefit of both members of the marriage, liability may accrue to the non-signing spouse in community property states. Texas Community Property Law: Family Code, Title I, Subtitle B, Chapter 3. Subchapter A. 3002.

Kiper further objects that BAC authorized him to discuss loan matters through a letter of authorization requested from Plaintiff and signed by Emma Kiper and received by Defendant on December 7, 2006. Ex. 1 to #13, stating, "I am writing to you in reference to our account [number omitted by the Court]. My husband, William Kiper, handles our finances and I authorize him to speak on my behalf." He maintains that under Texas community property law debts incurred during a marriage for services used by both spouses are community property debts. Emma Kiper was disabled and confined to bed during a long recovery and Kiper handled her affairs under community property law and the authorization letter that she had signed.

Last, Kiper argues that he is the person on whom the mortgage fraud was perpetrated.

Kiper asks the Court to dismiss Defendant's motion and grant his.

**BAC's Opposition to #13 (#17)**

With copies of the Note, Deed of Trust, and Loan Modification Agreement attached as exhibits, BAC's opposition reiterates the points made its earlier motion to dismiss, especially that Kiper lacks standing to sue and that he cannot prove the elements of his claims for breach of contract, wrongful foreclosure and related torts.

Defendants maintain that generally only parties to a contract have the right to complain of a breach thereof.  *Grinnell v. Munson*, 137 S.W. 3d 706, 712 (Tex. App.--San Antonio 2004, no pet.).  During marriage property is presumed to be the subject to the sole management, control, and disposition of a spouse if it is held in the spouse's name, as shown by muniment of title, contract, deposit of funds, or other evidence of ownership.  Tex. Family Code Ann. § 3.104(a)(Vernon 2006).   In contract actions, privity of contract is an essential element of recovery.  *Gonzales County Water Supply Cor. v. Jarzombek*, 918 S.W. 2d 57, 61 (Tex. App.--Corpus Christi 1996, no writ).  It is undisputed that the mortgage agreement is between Emma Kiper and Defendants; as such, the mortgaged property is held in Emma Kiper's name, as evidenced in the Note and Deed of Trust, and therefore she is the only person who can bring suit against Defendants arising from the mortgage agreement.

Moreover Defendants cite to *Wells v. Dotson*, 261 S.W. 3d 275,

285 (Tex. App.--Tyler 2008), in which the court found that a lessee's wife lacked standing to sue the lessor's heirs for breach of lease with option to purchase even though she had a presumptive community property interest in the option to purchase the leased property from the lessor because it was acquired during their marriage.  The Court held that the lessee had sole authority to bring an action related to his sole management community property, which had been acquired by contract in his name alone. *Id.* at 284-85.  It further ruled that the lessee's wife lacked standing to bring the suit. *Id.* at 285; *Smith v. CDI Rental Equipment, Ltd.*, 310 S.W. 3d 559, 566-67 (Tex. App.--Tyler 2010)(third party was not a party to a rental agreement and thus lacks standing to maintain a cause of action for breach of the rental agreement or for a sworn account arising out of the agreement).  Defendants argue that the facts here are the same.  Presumably Emma Kiper contracted with Defendants to finance the house during their marriage, so William Kiper has a community property interest in the house, but Emma Kiper has sole management and control of the property because the Note and Deed of Trust are only in her name.  Thus William Kiper lacks standing to sue Defendants and his suit must be dismissed for lack of subject matter jurisdiction as a matter of law.

Furthermore Kiper has no viable claim for breach of contract against Defendants because he is not a party to the Note, Deed of Trust or Loan Modification Agreement, which are in Emma Kiper's

name only.   Moreover Emma Kiper defaulted on her obligation to repay the mortgage loan, which means William Kiper cannot show the second element of a breach of contract claim, performance by plaintiff. *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W. 3d 345, 351 (Tex. App.--Houston [1st Dist.] 2001, no pet.)(The essential elements of a breach of contract under Texas law are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.).

Nor does Kiper have a wrongful foreclosure claim.   The elements of a wrongful foreclosure cause of action are (1) an irregularity in the foreclosure sale; (2) a grossly inadequate selling price; and (3) a causal connection between the irregularity and the grossly inadequate selling price. *Charter Nat'l Bank-- Houston v. Stevens*, 781 S.W. 2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied).   Plaintiff fails to offer any evidence of a deficiency and cannot prove either element.[4]

Defendants reiterate that the economic loss rule bars recovery for Kiper's tort-based claims because he cannot point to evidence of damages independent of those suffered as a result of breach of the Note, Deed of Trust or Loan Modification Agreement.

---

[4] The Court notes that at this stage Plaintiff is not required to prove anything, only to plead a plausible claim.

Finally Kiper's claim that Emma Kiper's letter authorized him to discuss default and possible loan modification with Defendants does not convey standing, nor does it give the Court subject matter jurisdiction.  The same is true of his argument that he handled the matters because she was disabled by the accident.  Standing is a component of subject matter jurisdiction, a constitutional prerequisite to maintaining suit under both federal and Texas law, and cannot be waived.  *Tex. Ass'n of Bus. & Tex. Air Control Bd.*, 852 S.W. 2d 440, 444-45 (Tex. 1993).

Defendants' reply (#16) reiterates their arguments.

### Court's Decision

Defendants' insistence that to have standing to contest foreclosure under a deed of trust, a party must either be the mortgagor under the deed of trust or be in privity with the mortgagor, while historically true, is by recent case law too restrictive.  *Long v. NCNB-Texas Nat. Bank*, 882 S.W. 2d 861, 867 (Tex. App.--Corpus Christi 1994).  "Modern cases have expanded the class of parties with standing to dispute the validity of the foreclosure sale by adopting a more liberal attitude toward this privity requirement."  *Id.*  Now cases allow parties that at the time of foreclosure "have an ownership interest in the property affected by the foreclosure."  *Pizzini v. Bank of America*, Civ. A. No. SA-12-CV-308-XR, 2012 WL 1834052, * (W.D. Tex, May 18, 2012); *Cuauhtli v. Chase Home Finance LLC*, No. 406-CV-472-A, 2007 WL

548759, *3 & n.2 (N.D. Tex. Feb. 22, 2007), *aff'd*, 252 Fed. App'x 690 (5th Cir. 2007), *citing Ursic v. NBC Bank South Texas, N.A.*, 827 S.W. 2d 334, 336 (Tex. App.--Corpus Christi 1991, writ denied), *citing Goswami v. Metropolitan Savings*, 751 S.W. 2d 487, 489 (Tex. 1988).

"In Texas property possessed by either spouse during . . . marriage is presumed to be community property." *Cuauhtli*, 2007 WL 548759, at *3.  The party claiming that it is separate property has the burden to overcome this presumption by clear and convincing evidence.  *Id.* (even though plaintiff-wife was not a party to the deed of trust nor did she claim to be in privity with the mortgagor, the court required Chase to bear this burden because plaintiff's husband possessed the property during their marriage and the presumption gave plaintiff an ownership interest in the property affected by the foreclosure and standing to contest it), *citing* Texas Family Code § 3.003 (Vernon 2006).  Nevertheless, ultimately the district court granted summary judgment in favor of Chase because it found no irregularities in the foreclosure sale, and the Fifth Circuit affirmed, in addition ruling that there is no requirement that personal notice of the foreclosure be given to individuals who were not parties to the deed of trust and that Plaintiff had not raised issues in the district court that she improperly included on appeal.  252 Fed. App'x at 691.

The presumption of community property exists also "unless

there is an express agreement from the lender to look only to the separate property of the purchasing spouse for satisfaction of the debt," for example in the lien, note or related instruments; "[t]he intention of the spouses is not controlling in the absence of such an agreement." *Union Square Federal Credit Union v. Clay*, Nos. 2-07-167-CV and 2-07-168-CV, 2009 WL 1099434, *10 and n.95 (Tex. App.--Fort Worth Apr. 23, 2009).

Defendants here argue, but do not demonstrate, that although the property may be community property, a status still not established here by facts, Emma Kiper had sole management, control and disposition of the property under Texas Family Code § 5.22. The Court observes, in particular, that an express agreement between the spouses is required to alter the general rule that community property is subject to joint management and control, but Defendants have not alleged there is one. Nor are there sufficient facts before the Court to determine whether, if the residence was sole management property, whether it has been mixed with community property, especially after Emma Kiper was disabled, so as to subject it to joint management and control.

Regardless, while the issue has not been broached, the Court also currently sees no reason why Plaintiff should not be able to amend to add Emma Kiper as a plaintiff or to substitute her for himself to cure any problem with standing.

More significantly here, however, Kiper's petition fails to

state a cognizable claim for wrongful foreclosure. Other than his contending that BAC told him that his request for loan modification has been granted and therefore posting the property for foreclosure was wrong, as noted claims barred by the statute of frauds, even if Kiper has standing to challenge the foreclosure, he fails to state a cognizable claim. He does not allege facts identifying an irregularity or defect in the foreclosure proceedings that caused or contributed to recovery of a grossly inadequate sales price for the property. He makes no allegations of statutory deficiencies under § 51.002 of the Texas Property Code in the notice provided to Emma Kiper, nor does he even state the selling price of the property, no less show it was grossly inadequate.

As the Court indicated earlier, Kiper's claims under the DTPA and the DCPA fail as a matter of law, while his common law fraud and negligent misrepresentation claims are barred by the economic loss doctrine and fail to satisfy the pleading standards of Rule 9(b).

Accordingly, for the reasons stated above, the Court ORDERS the following:

(1) Defendants' motion to strike (#25) Plaintiff's Second Amended Complaint is GRANTED because Kiper failed to obtain consent from Defendants or leave from the Court and failed to respond to the motion;

(2) Plaintiff's motion for summary judgment (#13) is

DENIED; and

(3) Defendants' motion for dismissal for failure to state a claim is GRANTED and their motion for judgment on the pleadings is MOOT.

Because, as indicated earlier, the Court should provide a plaintiff, especially on proceeding *pro se*, with an opportunity to amend unless amendment is futile, and this Court cannot be sure that it would be futile here, the Court

ORDERS Plaintiff within twenty days to file an amended complaint to state a viable claim if he is able to meet the requirements discussed in this Opinion and Order or else to notify the Court that he no longer wishes to prosecute this suit. Failure to do either will result in dismissal of this action.

**SIGNED** at Houston, Texas, this 2nd day of August, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE